[No. 4724.]

Wood, impleaded, etc., v. McCombe, Administrator, et al.

1. Mines and Mining—Taxes and Taxation—Mining Property Subject to Taxation.

Under 2 Mills' Ann. Stats., §§ 3222-3225 (Sess. Laws 1887, pp. 340-341), all mines and mining property bearing precious metals, whether held under patent, application for patent or mining location, are subject to taxation. By § 3225 the possession is the subject of assessment, and a sale to enforce payment of delinquent taxes, under the general revenue laws of the state, passes the title and right of possession to the purchaser.—P. 180.

2. Mines and Mining—Taxes and Taxation—Tax Deed—Limitation of Actions.

Under 2 Mills' Ann. Stats., § 3902, a tax deed executed by the county treasurer in his official capacity, properly attested, acknowledged and recorded, vests in the purchaser all the right,

title, interest and estate of the former owner in and to the land conveyed, and is made prima facie evidence of the facts set forth in said section. Section 3904 provides that no action for the recovery of land sold for taxes shall lie unless brought within five years after the execution and delivery of the deed therefor by the treasurer. Held, that, where a tax deed issued by a county treasurer was not invalid upon its face, no action could be maintained for the recovery of the title conveyed by such deed against one who had been in possession of the premises under it during the full period of five years from the date of recording.—P. 184.

*Appeal from the District Court of Lake County.*
*Hon. Peter L. Palmer, Judge.*

Action by Alice J. McCombe, administratrix of John McCombe, deceased, Rowena E. McCombe by Alice J. McCombe, her next friend, and George R. Elder, successor in interest to Samuel McMillen, deceased, against Tingley S. Wood, impleaded with Mary M. Bullard, Anna L. Finnerty and Cecilia L. Wahrer. From a judgment in favor of plaintiffs, defendants appeal.                    *Reversed.*

Mr. CHARLES CAVENDER, for appellants.

Mr. GEORGE R. ELDER, *pro se.*

Mr. JUSTICE MAXWELL delivered the opinion of the court:

December 31, 1884, Peter Finnerty and Wilhelmina Gude, owners of the Comstock lode mining claim, Lake county, Colorado, entered the same for patent in the United States land office at Leadville, Colorado, and a receiver's receipt for mineral entry No. 2411 for 9.67 acres was issued to them therefor.

May 2, 1887, the commissioner of the general land office held for cancellation 1.80 acres of the entry, which area was not included in the application for patent, by reason of the fact that such area was

in conflict with the Idaho lode mining claim, United States survey No. 667.

December 12, 1894, the commissioner of the general land office cancelled mineral entry No. 2411 for failure to furnish certain proofs required by the department.

December 21, 1896, by order of the commissioner of the general land office, the entry of the Comstock lode was reinstated as to 7.88 acres, excluding, however, the area in conflict with the Idaho, 1.80 acres, for which last named area a supplemental application for patent was allowed and ordered.

Pursuant to this last order, June 19, 1897, appellants filed a supplemental application for patent for that portion of the Comstock included within the boundaries of the Idaho, being 1.80 acres.

August 19, 1897, John McCombe filed in the United States land office at Leadville, Colorado, his protest and adverse claim against such supplemental application for patent, and September 17, 1897, commenced this action against appellants in support of such adverse claim, alleging in his complaint that he was the owner of an undivided one-third interest in the Comstock, from which appellants had ousted him and unlawfully and wrongfully detained possession thereof from him, including that portion of the Comstock covered by the supplemental application for patent, to wit, 1.80 acres; that the action was in support of his adverse claim theretofore filed in the land office, and to recover possession of plaintiff's one-third interest in the Comstock.

Mr. McCombe died. His administratrix and heirs at law were substituted as plaintiffs. Thereafter, one Samuel McMillen was made a party plaintiff, and upon the suggestion of his death, George R. Elder, successor in interest, was substituted. June 4, 1901, Tingley S. Wood, one of the defendants and

appellant here, filed his answer denying the material averments of the complaint and affirmatively pleading title to an undivided one-third interest in the Comstock, in himself, under and by virtue of a tax deed dated August 8, 1892, recorded August 11, 1892, which tax deed was issued by the county treasurer of Lake county to one C. T. Carnahan and the property thereby conveyed to Carnahan, subsequently conveyed to Mr. Wood; that such tax deed was based upon a tax sale of the interest of Wilhelmina Gude in the Comstock lode made August 5, 1889, for delinquent taxes assessed against the property for the year 1888; the Statute of Limitations, Mills' Ann. Stats., § 3904, possession in himself and grantor, and payment of taxes since 1892, were also pleaded.

July 21, 1902, Mr. Elder filed a reply denying the material affirmative allegations of Mr. Wood's answer, and upon numerous grounds attacked the validity of the tax deed title relied upon by Mr. Wood. The principal grounds of such attack are, that in 1888, the year when the property was assessed under which the sale for delinquent taxes was made, the title was in the government of the United States and the property was not subject to assessment or taxation; that the advertisement of the tax sale was made by publication in the Sunday issue only of a newspaper, and therefore invalid, and the subsequent proceedings thereunder void; that the payment of all taxes subsequent to such sale was without force or effect, for the reason that the title being in the government the assessment of the property and its taxation was without authority; that 1.80 acres included in the assessment of the property, never was a part of the property, and that the inclusion of such area in the assessment and taxation rendered the whole assessment void.

By stipulation the reply of Mr. Elder stood as the reply of the heirs of Mr. McCombe.

A trial to the court without a jury resulted in a decree in favor of plaintiffs and against defendant, Wood, for an undivided one-third interest in the Comstock lode mining claim, United States survey No. 3613, an undivided one-third interest in that portion of the Comstock in conflict with the Idaho, to wit: 1.80 acres, that Mr. Wood had no interest whatever in the Comstock and that the tax deed to Carnahan and Carnahan's deed to Wood were invalid and void.

Two questions decisive of this appeal are presented by this record: (1) Are mining claims in this state, which have not been patented or entered for patent, subject to taxation? (2) Had the bar of the Statute of Limitations (§ 3904, Mills' Ann. Stats.) run in favor of appellant Wood before the commencement of this action?

1. The general assembly, at its session of 1887, enacted legislation for the taxation of mines and mining property, the first section of which is:

"All mines and mining property of the class heretofore exempted by the constitution of the state of Colorado, shall hereafter be assessed and taxed, and the taxes levied enforced by sale of the property taxed, in default of payment, in the same manner as is now or may be provided by law, in the case of other classes of taxable real estate."

Section 2 provides a form for the description of such property for the purposes of taxation and assessment.

Section 3 construed with section 1, classifies all mines and mining property and possessory rights therein, for the purpose of assessment and taxation, into those producing during the fiscal year an amount

exceeding $1000.00, and those producing less than that amount or nothing at all.

Section 4 provides: "In case the mine or mining claim shall not be patented, or entered for a patent, but shall be assessable and taxable under this act, on account of producing gross proceeds, then, and in that case, the possession shall be the subject of the assessment, and if said mining property be sold for taxes levied, the sale for such taxes shall pass the title and right of possession to the purchaser, under the laws of Colorado."

Laws 1887, pp. 340-341, Mills' Ann. Stats., §§ 3222-3225.

This statute was under consideration by this court in *People v. Henderson,* 12 Colo. 369, and its meaning construed. Mr. Chief Justice Helm, writing the opinion of the court, said:

"Section 1 of the act before us contains an express legislative declaration that, after the adoption thereof, mines and mining claims bearing precious metals shall be taxed for revenue. All such property, regardless of its tenure—that is, whether held under patent, application for patent, or mining location, and regardless of the question as to whether the value thereof be much or little—is clearly and unequivocally subjected to taxation.

"In effect, sections 1 and 3 of the act, taken together, divide this species of property into two classes, viz: First, the mines or mining claims referred to in section 3, *i. e.,* those which during the preceding fiscal year have had a gross output aggregating upwards of $1,000.00 in value; and second, all the remaining or non-producing claims, without reference to value."

In summing up, the conclusions are stated as follows:

"Therefore by the act in question, we are advised: *First*, that all mines and mining claims containing precious metals are subjected to taxation; *second*, that this species of property is divided into two classes, viz., those mines producing upwards of $1,000.00 during the fiscal year preceding, and those producing less than that sum or nothing at all; and, *third*, that a specific method is provided for the valuation of mines belonging to the first class while all mines and claims included in the second class are to be assessed in the manner indicated by law for the assessment of other taxable real estate."

In *Pilgrim C. M. Co. v. Teller County,* 32 Colo. 334, at pages 338-9, the doctrine above announced is approved.

It is therefore settled in this state, under laws 1887, that all mines and mining property bearing precious metals, regardless of its tenure, that is whether held under patent, application for patent or mining location, are subject to taxation. By section 4 of the Act, *supra,* the possession is the subject of assessment, and a sale to enforce payment of delinquent taxes, under the general revenue laws of the state, passes the title and right of possession to the purchaser.

11. Section 3904, Mills' Ann. Stats., relied upon by appellant as a bar to this action is:

"No action for the recovery of land sold for taxes shall lie, unless the same be brought within five years after the execution and delivery of the deed therefor by the treasurer, any law to the contrary, notwithstanding.  *  *  *."

Under § 3902, Mills' Ann. Stats., a tax deed executed by the county treasurer in his official capacity, properly attested, acknowledged and recorded vests in the purchaser all the right, title, interest and estate

of the former owner in and to the land conveyed, and is made *prima facie* evidence of the following facts:

"First. That the real property conveyed was subject to taxation for the year or years stated in the deed.

"Second. That the taxes were not paid at any time before the sale.

"Third. That the real property conveyed had not been redeemed from the sale at the date of the deed.

"Fourth. That the property had been listed and assessed at the time and in the manner required by law.

"Fifth. That the taxes were levied according to law.

"Sixth. That the property was advertised for sale in the manner and for the length of time required by law.

"Seventh. That the property was sold for taxes as stated in the deed.

"Eighth. That the grantee named in the deed was the purchaser or the heir at law, or the assignee of such purchaser.

"Ninth. That the sale was conducted in the manner required by law."

To the introduction of the tax deed under consideration, appellees interposed an objection based upon seven grounds, not one of which assailed the deed for invalidity upon its face, that is, for such invalidity as appears upon the face of the deed, without the aid of evidence *aliunde*. Although the deed is not set forth in the abstract of record, we have examined it with care as it appears in the transcript, and conclude, that it is not subject to the objection that it is invalid upon its face, although counsel for appellee Elder repeatedly states in his printed argument and brief that it is void upon its face.

In *Sullivan v. Collins,* 20 Colo. 528, 532, in considering the force and effect of the statute (section 3904, Mills' Ann. Stats.), this court said:

"The statute is for the purpose of protecting claimants under tax deeds, and to that end it is provided that an action by the owner shall be barred if not brought within five years after the sale thereof."

In *Williams v. Conroy,* 35 Colo. 117, 83 Pac. 959, from the statement of facts it appears that plaintiff relied upon tax deeds which were recorded and under which he held for more than five years without any action by the original owner or any other person in any way questioning that title. Defendant claimed title, first, under tax deeds which were recorded less than five years, but under which actual possession was not taken by him for more than five years after the date of recording of plaintiff's tax deed, and, second, by virtue of a quit-claim deed executed and delivered by the original patentee owner in February, 1902, and which was after this action was begun and before the amended answer was filed. It also appears that the tax deeds of both plaintiff and defendant were regular and valid upon their face, but by reason of informalities in the sale, as matter of law, they were both void. The court said, Mr. Justice Campbell writing the opinion:

"The defendant obtained nothing by his quit-claim deed, for section 3904, Mills' Ann. Stats., says that no action for the recovery of land sold for taxes shall lie unless the same be brought within five years after the execution and delivery of a deed therefor by the treasurer, any law to the contrary notwithstanding. More than the full period of five years prescribed by this act of limitation had expired without any act of any sort by the patentee owner to recover possession or to question plaintiff's title under his tax deeds. The quit-claim deed gave to the

defendant such rights, and such only, as the grantor himself had; The patentee owner's title, under section 3902, Mills' Ann. Stats., was completely extinguished and barred; hence the patentee had nothing to give when he executed his quit-claim deed, and the defendant received nothing thereby. Express authority for this conclusion is found in *Crisman v. Johnson*, 23 Colo. 264, 47 Pac. 296, 58 Am. St. Rep. 224; *De Foresta v. Gast*, 20 Colo. 307, 38 Pac. 244, and *Bennet v. N. C. S. L. & I. Co.*, 23 Colo. 470, 48 Pac. 812, 85 Am. St. Rep. 281, which hold that a void deed, taken in good faith, constitutes sufficient color of title under our statute of limitations. See, also, Desty on Taxation, § 149. That the patentee's title was extinguished, and the same vested in the plaintiff under the facts of this case; see, also, *Lebanon Mining Co. v. Rogers*, 8 Colo. 34, 5 Pac. 661; *Moingona Coal Co. v. Blair*, 51 Iowa 447, 1 N. W. 768; *Harris v. Curran*, 32 Kan. 580, 4 Pac. 1044; *Griffin v. Turner*, 75 Iowa 250, 39 N. W. 294; Black on Tax Titles (2d ed.), § 284; *Shawler v. Johnson*, 52 Iowa 472, 3 N. W. 604.

"*Morris v. St. Louis Nat. Bank*, 17 Colo. 231, 29 Pac. 802, is not opposed to this conclusion. There are some observations in the opinion, in the nature of *dicta*, which might seem pertinent, but the holding was that the statute of limitations we are considering was not applicable to that case, as the action was not 'for the recovery' of land, and the deed had not been on record for five years before the action was brought."

It appears from the record, that McCombe and McMillen acquired by deed the interest of Wilhelmina Gude in the property, two years and four months before the bar of the statute attached, during which time no action was taken by them or either of them to test the validity of the tax deed, while Mr.

Elder's deed from Mr. McMillen was dated two years and two months after the bar of the statute had attached and about two years after this suit was commenced.

Mr. Elder's grantor had no title in the property to convey at the time he made his deed, the same having been completely extinguished and barred under § 3904, Mills' Ann. Stats., *Williams v. Conroy, supra.*

Our conclusions are, that under and by virtue of §§ 3222-25, Mills' Ann. Stats., the Comstock lode was subject to assessment and taxation in the year 1888; that the taxes assessed against the same being delinquent in 1889, the property was subject to sale in that year; that the tax deed issued by the county treasurer August 8, and recorded August 11, 1892, was authorized, and not being invalid upon its face, was *prima facie* evidence of the matters stated in § 3902, Mills' Ann. Stats., *supra;* that the title and right of possession of McCombe and McMillen vested thereby in the purchaser, Carnahan, and was by him conveyed to Mr. Wood, and that no action for the recovery of the title conveyed by such tax deed could be maintained against one who had been in the possession of the premises under such tax deed during the full period of five years from the date of the record of the tax deed, at the time this suit was commenced, under § 3904, Mills' Ann. Stats., *supra.*

The judgment and decree must be reversed and the cause remanded with instructions to vacate the same, and enter judgment for appellant Wood, for possession of the premises according to the prayer of his answer.                    *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GUNTER concurring.